1  Leslie T. Gladstone, Esq.  (SBN 144615)
2  E-mail:  leslieg@flgsd.com
   Christin A. Batt, Esq.  (SBN 222584)
3  E-mail:  christinb@flgsd.com
4  FINANCIAL LAW GROUP
   401 Via Del Norte
5  La Jolla, CA 92037
6  Telephone: (858) 454-9887
   Facsimile:  (858) 454-9596
7

8  Attorneys for Ronald E. Stadtmueller, Chapter 7 Trustee of the
   Bankruptcy Estate of Karma Capital, Inc.
9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13 | In re: | CIVIL NO. 19cv1070-LAB (KSC) |

14 | KARMA CAPITAL, INC., | Bankruptcy No. 19-01962-LA7 |

15 | | |

16 | Debtor. | **APPELLEE RONALD E. STADTMUELLER'S RESPONSIVE BRIEF** |

17 | | |

18 | MARC AND TRISHA GATES, | |

19 | Appellants, | On appeal from the May 23, 2019 Order of the United States Bankruptcy Court for the Southern District of California Converting Chapter 11 Case to Case Under Chapter 7 |

20 | | |

21 | v. | |

22 | SANTEE TROLLEY SQUARE 991, LP, et al., | |

23 | | |

24 | Appellees. | |

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................... 1

II.   ISSUES ON APPEAL ................................................... 2

III.  STATEMENT OF FACTS ............................................. 3

IV.   MEMORANDUM OF POINTS & AUTHORITIES ......................... 11

      A.   THE STANDARD OF REVIEW ............................... 11

      B.   DEBTOR MUST COMPLY WITH THE BANKRUPTCY
           CODE AND HAS NO RIGHT TO DISMISSAL OF ITS
           CASE. ....................................................... 12

      C.   THE BANKRUPTCY COURT DID NOT ABUSE ITS
           DISCRETION IN CONVERTING DEBTOR'S CASE
           TO CHAPTER 7. ........................................... 12

           1.   On Request of a Party in Interest and After Notice
                and a Hearing ....................................... 13

           2.   Cause to Dismiss or Convert ....................... 13

           3.   The Best Interests of Creditors and the Estate ...... 15

      D.   NOTICE AND A HEARING:  APPELLANTS WERE
           AFFORDED DUE PROCESS AND WERE NOT
           ENTITLED TO AN EVIDENTIARY HEARING .................. 18

           1.   Notice and a Hearing .............................. 19

           2.   Local Bankruptcy Rules ............................ 21

           3.   Bankruptcy Court's Discretion to Set Limitations
                and Conditions .................................... 21

V.    CONCLUSION ....................................................... 24

CERTIFICATION OF COMPLIANCE ....................................... 25

SCHEDULE 1:  Documents cited herein in chronological order with
citations to the Record .................................................. 26

# TABLE OF AUTHORITIES

<u>Federal Statutes</u>                                                                                    <u>Page</u>

     11 U.S.C. § 102  ....................................................................... 19

     11 U.S.C. § 105  ................................................................ 5, 21, 22

     11 U.S.C. § 305  ....................................................................... 20

     11 U.S.C. § 327  ......................................................................... 4

     11 U.S.C. § 345  ......................................................................... 4

     11 U.S.C. § 1107  ....................................................................... 3

     11 U.S.C. § 1112  ................................ 1, 5, 8-9, 12-15, 18-19, 21, 23-24

<u>Federal Rules</u>

     Fed. R. Bankr. P. 1017  ............................................................ 12

     Fed. R. Bankr. P. 4001  .............................................................. 5

     Fed. R. Bankr. P. 8009  .............................................................. 2

     Fed. R. Bankr. P. 8010  .............................................................. 2

     Fed. R. Bankr. P. 9005  ............................................................ 21

<u>Local Bankruptcy Rules</u>

     LBR 9013  ............................................................................. 21

<u>Cases</u>

     *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985)............ 11

     *Bill v. Brewer*, 799 F.3d 1295 (9th Cir. 2015) ...................................... 11

     *Camden Ordnance Mfg. Co. of Ark., Inc. v.*
          *U.S. Trustee (In re Camden Ordnance Mfg.*
          *Co. of Ark., Inc.)*, 245 B.R. 794
          (E.D. Pa. 2000) ........................................................ 12, 13, 18, 20

FINANCIAL
LAW GROUP

IN RE KARMA CAPITAL, INC.
CIVIL NO. 19cv1070-LAB (KSC)
APPELLEE'S RESPONSIVE BRIEF

iii

1
2

*Commodity Futures Trading Comm'n v. Weintraub,*
   471 U.S. 343 (1985) ...................................................... 3, 4

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304 (2d Cir. 1997) .............................. 19

*In re Am. Capital Equip., LLC*, 688 F.3d 145 (3d Cir. 2012) ............. 18

*In re Consol. Pioneer Mortgage Entities v. U.S. Trustee*,
   264 F.3d 803 (9th Cir. 2001) ...................................... 11

*In re Henson*, 289 B.R. 741 (Bankr. N.D. Cal. 2003) ......................... 15

*In re Rosson*, 545 F.3d 764 (9th Cir. 2008) ................................. 19, 21

*In re Staff Investment Co.*,
   146 B.R. 256 (Bankr. E.D. Cal. 1993) ..................................... 15

*Kingsway Capital Partners, LLC v. Sosa*,
   549 B.R. 897 (N.D. Cal. 2016) .................................... 13

*Retz v. Samson (In re Retz)*, 606 F.3d 1189 (9th Cir. 2010) ................ 11

*Sullivan v. Harnisch (In re Sullivan)*,
   522 B.R. 604 (B.A.P. 9th Cir. 2014) ......................................... 13

*Thompson v. Margen (In re McConville)*,
   110 F.3d 47 (9th Cir. 1997) ..................................................... 4

*U.S. v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) ................................. 11

*Wolf v. Weinstein*, 371 U.S. 633 (1963) ..................................... 4

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,
   839 F.2d 610 (9th Cir. 1988) ......................................... 4

Treatises

   4 NORTON BANKRUPTCY LAW AND PRACTICE 2d § 82:1 ...... 12

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.

## INTRODUCTION

Appellants Marc and Trisha Gates are the sole officers, directors, and shareholders of debtor Karma Capital, Inc. (Supp. App. 293)

Debtor operated seven local Greek restaurants. Appellants caused Debtor to stop paying rent at six restaurant locations[1] and, predictably, the landlords filed unlawful detainer actions against Debtor in state court. Appellants sought bankruptcy protection for Debtor, specifically the automatic stay, in order to obtain an advantage over creditor landlords who were preparing to oust them from the premises. Yet, Appellants failed to comply with the obligations imposed by the Bankruptcy Code and the Court. For example, Appellants did not even hire experienced bankruptcy counsel to properly advise Debtor or assist in meeting Debtor's bankruptcy obligations. When Appellants belatedly realized that creditors, too, have rights in bankruptcy, Appellants wanted out. Appellants asked the Court to dismiss the bankruptcy case, but six creditors sought conversion of the case to chapter 7. After finding sufficient cause to dismiss or convert the case, the Bankruptcy Court considered the best interests of *creditors*—as required by Section[2] 1112(b)—and converted the case to chapter 7. Appellants appeal the Bankruptcy Court's Order converting the case.

Appellee Ronald Stadtmueller was appointed as chapter 7 trustee of Debtor's bankruptcy estate. Trustee Stadtmueller continues to operate Debtor's six

---

[1]    Debtor continued to pay rent for the Chula Vista restaurant location.
[2]    Unless otherwise indicated herein, "**Section**" and "**Chapter**" refer to the Bankruptcy Code (11 U.S.C. § 101, et seq.), "**Federal Rule**" refers to the Federal Rules of Civil Procedure, "**Bankruptcy Rule**" refers to the Federal Rules of Bankruptcy Procedure, and "**Local Rule**" refers to the Local Rules for the U.S. Bankruptcy Court for the Southern District of California.

restaurants,[3] with the cooperation of the various creditor landlords, as he prepares to sell Debtor's restaurant business.

It must be noted that throughout Appellants' Opening Brief Appellants refer to "the Trustee," which should be understood to mean a representative of the Office of the United States Trustee, not Appellee Ronald Stadtmueller, the chapter 7 trustee.

Finally, due to Appellants' failure to include many documents in its Excerpts of Record that Appellants previously designated as items to be included in the Record,[4] Appellee supplemented its Appendix to include those documents in the Record.[5]  (Appeal Docket No. 15)  For the Court's convenience, attached hereto as Schedule 1 is a list of the documents cited herein, arranged in chronological order and accompanied by the respective citation to the Record. [6]

# II.

# ISSUES ON APPEAL

As stated by Appellants in their Opening Brief, this appeal involves only the following two issues:

---

[3]    The Poway restaurant closed prepetition when the landlord obtained a judgment against Debtor and retook possession of the premises.

[4]    Appellants' Designation of Items to Be Included in Record on Appeal contained 15 documents and notably did **not** contain the May 9 or May 16 hearing transcripts or the Bankruptcy Court's Tentative Ruling regarding the Order appealed.  (Appeal Docket No. 3)  Appellants' Excerpt of Record included only 4 of the 15 items designated by Appellants.  (Appeal Docket No. 12)  It also appears that Appellants failed to have their items in the Record properly certified by the Bankruptcy Court before transmittal to the District Court.  *See* Scheduling Order at Appeal Docket No. 6; Fed. R. Bank. P. 8010(b)(1).

[5]    "The record on appeal must include … items designated by the parties …."  Fed. R. Bankr. P. 8009(a)(4).

[6]    Citations to the Record herein are in the following formats:  to Appellants' Excerpts of Record (ER [Page No.]); to Appellee's Supplemental Appendix (Supp. App. [Page No.]).  As Appellants' Excerpt of Record contains incomplete documents, Appellee will rely mostly on Appellee's Supplemental Appendix.

FINANCIAL
LAW GROUP

IN RE KARMA CAPITAL, INC.
CIVIL NO. 19cv1070-LAB (KSC)
APPELLEE'S RESPONSIVE BRIEF

2

Issue 1:  Whether the Bankruptcy Court denied Debtor and Appellants due process by refusing to hold an evidentiary hearing on the motion to dismiss bankruptcy and motions to convert (including objections to evidence filed) from Chapter 11 to Chapter 7.

Issue 2:  Whether the Bankruptcy Court erred in refusing to accept exhibits and testimony at hearing on motion to dismiss and motions to convert Chapter 11 to Chapter 7.

## III.

## STATEMENT OF FACTS

On April 4, 2019 (the "**Petition Date**"), Karma Capital, Inc. ("**Debtor**") filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  (Supp. App. 028)  As of the Petition Date, Debtor operated seven Daphne's California Greek restaurants, located in Poway, La Jolla, Santee, San Diego, Chula Vista, Carlsbad, and Mira Mesa.  (Supp. App. 032)  Debtor's seven largest creditors holding unsecured claims are landlords for six of the restaurant locations and Mediterranean Cuisine Operating Co. LLC ("**MCOC**").  (Supp. App. 034-035)  As of the Petition Date, Debtor owed between $28,478 and $51,573 to each of those six landlords for unpaid rent or a judgment for unpaid rent and owed $189,000 and $251,000 to MCOC on promissory notes (Supp. App. 034-035); Debtor also owed Union Bank nearly $1.2 million on its secured claim (Supp. App. 036); Debtor had general unsecured claims totaling $1,159,922 (Supp. App. 096); Debtor had eight pending lawsuits, six of which were filed against Debtor by various landlords, one against Debtor by MCOC, and one by Debtor against Michael Nakleh, et al. (Supp. App. 055).  And, during the 12 months before the Petition Date, Appellants transferred $87,296 of Debtor's funds to themselves as payroll and draws.  (Supp. App. 040)

Under the Bankruptcy Code, Debtor as debtor-in-possession had fiduciary duties to creditors and the bankruptcy estate.  11 U.S.C. § 1107(a); *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985) (debtor in

possession bears essentially the same fiduciary obligations to creditors as a trustee); *Thompson v. Margen (In re McConville)*, 110 F.3d 47, 50 (9th Cir. 1997) (chapter 11 debtors in possession "were fiduciaries of their own estate owing a duty of care and loyalty to the estate's creditors"); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 614 (9th Cir. 1988) ("As debtor in possession he is the trustee of his own estate and therefore stands in a fiduciary relationship to his creditors."). "Indeed, the willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" *Weintraub*, 471 U.S. at 355, quoting *Wolf v. Weinstein*, 371 U.S. 633, 649-52 (1963).

On April 29, 2019, the Bankruptcy Court entered its "Order Re: Chapter 11 Petition 1) Setting Status Conference; 2) Setting Compliance Deadlines; and 3) Setting Sanctions, if Appropriate, Including Dismissal, Conversion or Appointment of a Chapter 11 Trustee or Examiner Because of Noncompliance with Above-Reference Requirements" (referred to by the Bankruptcy Court as the "**OSC**"). (Supp. App. 103) The OSC provided in part:

> To insure compliance with the numerous federal and local rules governing bankruptcy procedure as well as the United States Trustee's Operating and Reporting Requirements for Chapter 11 cases ("ORR") and for other good cause appearing, the Court hereby
> …
> 2.    ORDERS that ***prior to the [May 9, 2019, at 2:00 p.m.] status conference***, the ***Debtor shall have complied*** with ***__all__*** applicable ORR, federal and local bankruptcy rules governing Chapter 11 cases, ***including***, but not limited to
>     a.    Closure of pre-petition bank accounts and proof of opening new debtor-in-possession bank accounts [11 U.S.C. § 345; ORR B.2] and inclusion of U.S. Trustee as a party entitled to notice on all insurance policies [ORR C.1]

/ / /

/ / /

IN RE KARMA CAPITAL, INC.
CIVIL NO. 19cv1070-LAB (KSC)
APPELLEE'S RESPONSIVE BRIEF

4

     b.     Submission of all applications for employment of professionals [11 U.S.C. § 327(a); LBR 2014-1]

     c.     Submission of application(s) for payment of insider compensation or other remuneration [See LBR 2002-2(A)(5) and LBR 4002-2; ORR E.5]

     d.     Submission of all operating reports due under ORR C.3.

     e.     Filing of 90 day cash flow budget as required by ORR C.2

     f.     Submission of motion or notice of agreement to use cash collateral, if applicable. [See FRBP 4001(d)(1); Appendix D2, Local Rules of the U.S.B.C., S.D., CA]

3.     … ***Failure to*** … ***comply with the requirements ordered by the Court*** may be cause to dismiss or ***convert this case***, appoint a Chapter 11 trustee or examiner ***or impose other appropriate sanctions*** as permitted by 11 U.S.C. §§ 105(a) and 1112(b)[.]

(Supp. App. 102-103 (emphasis added))  Despite the OSC, as of the May 9, 2019 status conference, Debtor had ***not*** closed all prepetition bank accounts (ER 30, lls 22-25), ***not*** added the U.S. Trustee as a party entitled to notice on all insurance policies (ER 30, lls 22-28), ***not*** submitted an application to employ general bankruptcy counsel (ER 34, lls 5-7), ***not*** submitted an application for payment of insider compensation or remuneration (ER 33, lls 6-7), ***not*** submitted an operating report (Docket, Supp. App. 005-014), ***not*** filed a 90-day cash flow budget (Docket, Supp. App. 005-014), ***not*** filed motions regarding Debtor's business operations (ER 31, lls 2-4), ***not*** filed a motion to provide adequate assurance payments to its utilities (ER 32, lls 23-26), ***not*** submitted UCC lien search results to the U.S. Trustee (ER 32, lls 4-13), ***not*** filed a motion to pay employee wages (ER 32, lls 14-20).  In fact, Debtor had ***failed*** to even list prepetition employee wage claims on its bankruptcy schedules, but Debtor nevertheless paid such prepetition wage claims postpetition.  (ER 32, lls

20-22).  According to Ms. Pandeli of the U.S. Trustee's Office:  "The [U.S.] Trustee's concerned that little has been filed to date to ensure the Debtor's compliance with the Code as it continues to operate seven restaurants while in chapter 11 bankruptcy."  (ER 33, lls 23-26)  Ms. Pandeli's other statement, oft referred to by Appellants, that Debtor was in "substantial compliance" is belied by the fact that Debtor had *failed to comply with each and every one of the mandatory requirements* set forth in the OSC.[7]

At the May 9, 2019 status conference, the Court also ruled on four motions brought by four landlords for relief from the automatic stay to pursue their unlawful detainer actions and regain possession of their premises.  (ER 25)  The Court granted all four motions.  (ER 47)  In the Tentative Ruling adopted by the Court, the Court explained that under Ninth Circuit authority "once the notice period as passed and the lessee (debtor) has failed to pay rent, the lease is terminated and the lessee no longer has the right to possession."  (ER 12-13)  "The debtor must return to state court to try its claims that the notice was invalid and therefor its lease was not terminated prepetition.  Without a favorable determination on its claims that the lease was not terminated, the debtor cannot assume its lease in a Ch. 11 plan."  (ER 12-13)

Also at the May 9 status conference, after having reviewed the Court's Tentative Ruling that the automatic stay will be lifted as to the landlords' unlawful detainer actions, Debtor's counsel announced that Debtor no longer wanted to be in bankruptcy.  (ER 35)  Debtor's counsel admitted that Appellants filed Debtor's bankruptcy case to obtain the protections of the automatic stay.  (ER 35)  "My client was faced with a problem in that he was going to be forced out of one of the locations in this case.  There's eight of them—actually seven of them.  And he was going to be forced out of one of them.  And that's why there was a petition filed."  (ER 35, lls 6-

---

[7]    Although Debtor filed a motion for use of cash collateral on May 9, 2019, that motion was irrelevant because it was neither noticed to creditors nor scheduled for hearing.  (Supp. App. 014, Docket No. 76)

10)  Creditors, however, did not support dismissal and sought conversion of the case to chapter 7 or the appointment of a chapter 11 trustee.  (ER 40)

The Bankruptcy Court scheduled a hearing for May 16, 2019, and set a briefing schedule for Debtor's motion to dismiss the case and for any creditor's motion for conversion.  (ER 40-41)  The Court explained that the status conference was set up as an Order to Show Cause hearing to permit flexible and efficient determination of chapter 11 issues, particularly involving whether to dismiss or convert a case.  "The reason the Court started using OSC's is precisely for reasons like this, where we needed a fast way of making sure that everyone who was interested in this case was on notice that this hearing would come up and it would be continued from time to time, and it would not necessarily be—the Court would not be required to renotice the dismissal because it was within the scope of the OSC to dismiss or to convert."  (ER 41, lls 10-17)  The Court informed Appellants that the May 16 hearing on motions to dismiss or convert would ***not*** be an evidentiary hearing.  (ER 42)  In accordance with Local Rules, therefore, any evidence that Appellants wished to put before the Court in support of dismissal or opposition to conversion had to be filed and served with Appellants' motion to dismiss or opposition to conversion. (LBR 9013-7)

Appellants caused Debtor to file the following documents:  motion to dismiss chapter 11 case (Supp. App. 292) and opposition to creditors' motions to convert the case to chapter 7 and Appellants' supporting declaration (Supp. App. 504 & 513)

Creditors filed the following documents:

- motion for conversion filed by Santee Trolley Square 991, LP (Supp. App. 131)

- motion in support of OSC re conversion filed by MUFG Union Bank, N.A. (Supp. App. 176 & 292)

- motion for conversion filed by Mediterranean Cuisine Operating Company, LLC (Supp. App. 301)

- opposition to motion to dismiss filed by Plaza Paseo Real Associates, LLC, in which creditor requested conversion (Supp. App. 522)

- opposition to motion to dismiss filed by ROIC Creekside Plaza LLC, in which creditor requested conversion (Supp. App. 526)

- opposition to motion to dismiss filed by Mediterranean Cuisine Operating Company LLC and Mediterranean Cuisine Franchising Co., LLC, in which creditors requested conversion. (Supp. App. 143)

In addition, the U.S. Trustee filed a Statement of Position not opposed to either dismissal or conversion. (Supp. App. 533)

All of the above documents informed the Court regarding each respective party's position on dismissal and/or conversion. ***Yet Appellants included in its Excerpt of Record <u>none</u> of these motions and oppositions that led to the Bankruptcy Court's Order now on appeal.*** (Appeal Docket No. 12, page 2)

On May 15, 2019 (the day before the May 16 hearing), the Bankruptcy Court issued its Tentative Ruling denying Debtor's motion to dismiss the chapter 11 case and granting the creditors' motions to convert the case to chapter 7. Contrary to Appellants' argument (Opening Brief, at 20-22), the Bankruptcy Court made the following specific findings of fact:

> 11 U.S.C. 1112(b)(1) provides that a Court shall convert a Ch. 11 case to a Ch.7 case or dismiss the case if movant establishes "cause". The debtor Karma Capital itself has independently moved to dismiss this case which should obviate the need for an extensive discussion of "cause". However, the movants requesting conversion lay out independent bases demonstrating "cause" under subsection (b)(4). They are:
>
> 1.     Sec. 1112(b)(4)(A) – Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation: The debtor has already lost the protection of the automatic stay and is facing eviction in state court in four out of seven of its restaurant locations.

Further, debtor is continuing its operations even where it is in unlawful detainer proceedings, allegedly in violation of its franchise agreements, thereby infringing the trademarks and misappropriating the trade secrets of MCOC, LLC, the seller, which in turn exposes the debtor and its estate to damages.

2.    Sec. 1112(b)(4)(B) - Gross mismanagement of the estate: Debtor has failed to pay rent to 5 of its seven operating locations.  Further, it has failed to meet its basic obligations of a Ch. 11 DIP; specifically, there is no calendared motion to use cash collateral and yet debtor has used cash collateral for its operations. [such motion was filed on 5/9/19 as a "first day" motion for a case that was filed on 4/4/19.  It was not noticed for hearing]

3.    Sec. 1112(b)(4)(D) - unauthorized use of cash collateral has substantially harmed one or more creditors. See para. 2 above. MFUG Union Bank assets a duly-perfected security interest in the cash collateral.

4.    Sec. 1112(b)(4)(E) - failure to comply with an order of the Court.  On 4/29/19, the Court issued an OSC to the debtor on notice to all creditors (ECF #55) setting compliance deadlines to be met in advance of the 5/9/19 hearing by the debtor and warning that sanctions could be assessed for failure to do so.  Among those requirements were submission of applications to employ professionals (not done by debtor; see Acting UST's Omnibus Statement of Position ("SOP"), ECF #99, p. 2, fn. 1); submission of a 90 day cash flow budget (apparently submitted to the UST sometime after the 5/9/19 hearing).

Having concluded that cause has been established, the question is one of remedy—conversion as requested by the creditors versus dismissal as requested by the debtor. As stated by the UST, "This determination is examined through the lens of what is in the best interests of creditors and the estate."  SOP, p. 2:8-9

Both MCOC and MUFG Union raise questions as to what happened to the monies collected from operations (approx.

$334K gross income/mo from 1/1/19 to date of filing) during the time when the debtor was neither paying its landlords, its lender or its franchise fees. It is their belief that a Ch. 7 trustee will be in the best position to accomplish that investigation. Further, at the time this case was filed, debtor was in litigation with 6 or [sic] its 7 landlords in unlawful detainer proceedings, one of which was litigated to judgment and is now being appealed. Creditor Trolley Square rightfully points out that if this case is dismissed, a free-for-all among the various creditors racing to get possession of their premises and enforce their judgments. And once that possession is regained, the business assets of the debtor will be lost, "sucked away into Attorneys fees in the endless litigation". [Santee Motion for Conversion, ECF #77, p.3 of 77-1] Finally, a Ch. 7 Trustee at least has the potential of being able to wind down, in an orderly fashion, the presently operating restaurants of the debtor which the principal, mired in state court litigation, will be unable to achieve.

Therefore, looked at through the lens of what is in the best interests of creditors, conversion of this case to one under Ch. 7 is appropriate and necessary for the protection of those interests.

(Supp. App. 115-157).

On May 23, 2019, the Court entered the Order denying Debtor's motion to dismiss (ECF No. 121) and the Order on Motion to Covert Case Under Chapter 11 to Case Under Chapter 7 (the "**Conversion Order**") (ER 19). Appellants appeal only the Conversion Order. (ER 21)

Since conversion of the case to chapter 7, Appellee Stadtmueller, the chapter 7 trustee, is operating Debtor's six remaining restaurants pursuant to Section 721 of the Bankruptcy Code and the Conversion Order. (ER 20) Landlords at all six locations have consented to Trustee Stadtmueller's possession of the premises and operation of the restaurants while the Trustee markets the restaurants for sale.

/ / /

# IV.

## MEMORANDUM OF POINTS & AUTHORITIES

## A.    THE STANDARD OF REVIEW.

"The decision to convert the case to Chapter 7 is within the bankruptcy court's discretion." *In re Consol. Pioneer Mortgage Entities v. U.S. Trustee*, 264 F.3d 803, 806 (9th Cir. 2001). Whether the trial court has abused its discretion is determined under a two-part test: first, the appellate court determines de novo whether the trial court identified the correct legal rule to apply to the relief requested and, second, if the trial court identified the correct legal rule, the appellate court determines whether the trial court's application of the correct legal standard was (1) "illogical," (2) "implausible," or (3) without "support in inferences that may be drawn from the facts in the record." *U.S. v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 577 (1985)). The trial court "abused its discretion by making a clearly erroneous finding of fact" only if its application of the correct legal standard is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Hinkson,* 585 F.3d at 1262.

Great deference is given to the bankruptcy court's findings that are based on determinations as to witness credibility. *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1196 (9th Cir. 2010) (As the trier of fact, the bankruptcy court has "the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

The bankruptcy court's order may be affirmed on any basis supported by the record. *Bill v. Brewer*, 799 F.3d 1295, 1299 (9th Cir. 2015).

/ / /

/ / /

/ / /

**B.      DEBTOR MUST COMPLY WITH THE BANKRUPTCY CODE AND HAS NO RIGHT TO DISMISSAL OF ITS CASE.**

"Once a debtor submits to the jurisdiction of the bankruptcy court and avails itself of bankruptcy protections, the debtor must comply with the Bankruptcy Code." *Camden Ordnance Mfg. Co. of Ark., Inc. v. U.S. Trustee (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 805 (E.D. Pa. 2000).  Under the Bankruptcy Code, "a debtor has no absolute right to dismiss a Chapter 11 case." *Id.*, quoting 4 NORTON BANKRUPTCY LAW AND PRACTICE 2d § 82:1 at 82-2 (1997, supplemented 1999) (citing Fed. R. Bankr. P. 1017(a)).  "[V]olunary dismissal in Chapter 11 is not a debtor's right but rather turns on whether the relief is in the best interest of creditors." *Camden Ordnance*, 245 B.R. at 804.

Section 1112(b) of the Bankruptcy Code allows "a bankruptcy court to convert a voluntary Chapter 11 case, even if a debtor wants the case dismissed.  [Debtor] was not compelled to seek protection in bankruptcy and thus, following the statutory framework of the Bankruptcy Code is a fair and necessary requirement for a debtor seeking the benefits of bankruptcy." *Id.* at 805.

In the present case, Debtor sought the protections of the Bankruptcy Code, yet failed to comply with its obligations to the Court, the U.S. Trustee, and the creditors as mandated by the Code.  Debtor then sought dismissal of the chapter 11 case to serve Debtor's and Appellants' own interests.  As explained below, conversion of the chapter 11 case to chapter 7 was in the best interests of creditors and the estate and within the Bankruptcy Court's broad discretion.

**C.      THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN CONVERTING DEBTOR'S CASE TO CHAPTER 7.**

Section 1112(b)(1) of the Bankruptcy Code provides, subject to exceptions not relevant here, "on request of a party in interest, and ***after notice and a hearing***, the court ***shall convert*** a case under this chapter to a case under chapter 7 ***or dismiss*** a

case under this chapter, ***whichever is in the best interests of creditors and the estate***, for ***cause*** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."[8]  11 U.S.C. § 1112(b)(1) (emphasis added).  "The plain meaning of § 1112(b) allows the bankruptcy court to convert a debtor's voluntary Chapter 11 case when it is in the best interest of creditors and the estate, even if the debtor opposes conversion and favors dismissal."  *Camden Ordnance*, 245 B.R. at 803.

All elements of Section 1112(b) were met in this case.

### 1.    *On Request of a Party in Interest and After Notice and a Hearing*

Debtor and six creditors are parties in interest that filed motions or oppositions weighing in on whether the Court should dismiss or convert the case.  The Bankruptcy Court's OSC provided notice to all parties in interest that dismissal or conversion were at issue, and Debtor and creditors had at least a week's notice that motions for dismissal or conversion would be heard at the May 16, 2019 hearing.

The notice and hearing requirements are discussed in more detail in Part IV.D below.

### 2.    *Cause to Dismiss or Convert*

The Bankruptcy Court concluded that "cause" existed to either dismiss or convert the case.  "The Bankruptcy Court has broad discretion in determining what constitutes "cause' under section 1112(b)."  *Kingsway Capital Partners, LLC v. Sosa*, 549 B.R. 897, 902 (N.D. Cal. 2016) (citing *Sullivan v. Harnisch (In re Sullivan),* 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014)).  "Cause" is undefined but Section 1112(b)(4) sets out a nonexclusive list of possible "cause" to justify dismissal or conversion,

---

[8]    On page 13 of Appellants' Opening Brief, Appellants purport to quote Section 1112(b)(1), but their quote is entirely inaccurate and deceptive.

which includes (i) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, (ii) gross mismanagement of the estate, (iii) unauthorized use of cash collateral substantially harmful to one or more creditors, and (iv) failure to comply with an order of the Court.  11 U.S.C. § 1112(b)(4)(A), (B), (D), (E).  As clearly stated in its Tentative Ruling, the Bankruptcy Court made specific findings of fact that cause existed under all four of these subsections of Section 1112(b)(4).  (Supp. App. 155-156)  The Bankruptcy Court's findings of fact included:

(a)     Debtor's continued operation—where Debtor had already lost the protection of the automatic stay, is facing eviction in state court in four out of seven restaurant locations, and was allegedly in violation of its franchise agreements— exposes Debtor and the estate to damages;

(b)     Debtor failed to pay rent at five of its seven operating locations;

(c)     Debtor failed to meet its basic obligations of a chapter 11 debtor-in-possession; specifically, "there is no calendared motion to use cash collateral and yet debtor has used cash collateral for its operations";

(d)     Debtor's unauthorized use of cash collateral has substantially harmed one or more creditors; and

(e)     Debtor failed to comply with the Court's OSC, which warned that sanctions could be assessed for failure to so comply; among those requirements were submission of applications to employ professionals (not done) and submission of a 90-day cash flow budget before the 5/9/2019 hearing.  (Supp. App. 155-156)

These findings of fact are well supported in the record.

Debtor, too, argued that "cause" exists due to substantial or continuing loss to or diminution of the estate and Debtor's inability to achieve reorganization within the statutory requirements of the Bankruptcy Code.  (Supp. App. 297)

/ / /

/ / /

IN RE KARMA CAPITAL, INC.
CIVIL NO. 19cv1070-LAB (KSC)
APPELLEE'S RESPONSIVE BRIEF

14

### 3. *The Best Interests of Creditors and the Estate*

"Upon the requisite showing of cause under section 1112(b), it is up to the court to choose between dismissal or conversion, 'whichever is in the best interest of creditors and the estate.'"  *In re Henson*, 289 B.R. 741, 752 (Bankr. N.D. Cal. 2003) (quoting *In re Staff Investment Co.*, 146 B.R. 256, 260 (Bankr. E.D. Cal. 1993)). Notably, once cause is found, no consideration need be given to whether dismissal or conversion is in the best interests of the debtor or its principal.  *In re Staff Investment Co.,* 146 B.R. at 261 ("The best interest of the debtor is not specifically a factor under section 1112(b). The Congress omitted specific reference to the interest of the debtor when it required focus on 'best interest of creditors and the estate.'").

In determining creditors' interests, the Bankruptcy Court considered the motions and oppositions filed by *six creditors* requesting conversion.  Not a single creditor filed a joinder or statement of position in support of Debtor's motion to dismiss the case.  (Docket, Supp. App. 014-018)  Landlord Santee Trolley Square 991, LP succinctly explained why conversion is in the best interests of creditors and the estate:

> In December 2018, Debtor stopped paying rent to at least six of the Landlords.  Based on Gates testimony in the 341 meeting, the restaurants continue to operate with a full staff.  Apparently, Debtor is meeting all obligations with respect to running the restaurants operations, except paying rent to the Landlords and franchise fees to the franchisor.

> Debtor is currently the defendant in six different unlawful detainer actions (Gates ¶ 5.[9])  One of the cases has been litigated to judgment, and the judgment has been appealed.  (Gates ¶ 8.)  Presumably, this may be the fate of the other unlawful detainer actions.

> Debtor also has filed suit in Los Angeles Superior Court against Mediterranean Cuisine Operating Company

---

[9]   Gates Declaration (Supp. App. 135-140)

15

("MCOC"), Nakhleh, Daphne's Inc. and Mediterranean Cuisine Franchising Company ("MCFCo") (collectively "Defendants") alleging numerous counts, including fraud. (Gates ¶ 12.)

These same Defendants filed a separate lawsuit in federal court seeking to enjoin Debtor's use of Daphne's trademarks.  (Gates ¶ 13.)

If this bankruptcy is dismissed, as Debtor now requests, it will result in a free for all in the various state courts, with the different landlords racing to get possession of their premises and to enforce their judgments.  Once possession of the premises are obtained, the source of all of Debtor's assets will be lost and any proceeds that the business operations generate will dry up, being sucked away into attorneys fees in the endless litigation.  Debtor and the Gates will be left with their damages claim in their state court lawsuit, while being the target in damages lawsuits for breach of their guarantees to the Landlords, breach of the franchise agreement to their franchisor and inevitably, breach of their loan agreements with secured and unsecured lenders.

…

Hence, the best, fairest and most direct solution for all of the creditors, and potentially the most beneficial outcome for the estate would be conversion to a Chapter 7.  This could insure the full and complete disclosure of Debtors' financial affairs.  It would allow the Chapter 7 trustee to evaluate debtors [sic] assets and especially the merits of and strategies in the varying lawsuits.  The trustee could figure the best plan for liquidating the estate, which potentially might include selling the restaurant locations and possibly assigning the leases.

Even Debtor's principal acknowledges that "the above referenced cases are better administered in the bankruptcy court by one judge rather than seven separate cases in two courts before three different judges."  (Gates ¶ 15.)  By my count, Debtor meant *eight* cases, in *three* courts before *multiple* different judges.

/ / /

(Supp. App. 132-134 (emphasis in original))  The above excerpt is an undisputed analysis of the best interests of creditors and the estate.  Appellants, on the other hand, made only the self-serving and hotly disputed argument that creditors and the estate are best served by Debtor operating outside of bankruptcy oversight so that it could continue its state and federal lawsuits against its creditors.

MUFG Union Bank and MCOC also filed motions for conversion explaining their serious concerns that Debtor's failure to file necessary monthly operating reports, applications for insider compensation, and a cash collateral motion with an appropriate budget resulted in a lack of transparency regarding Debtor's use of estate funds.  (Supp. App. 180 & 307-309)  In addition, MUFG Union Bank expressed concern that dismissal would likely lead to a subsequent bankruptcy filing when Debtor would again seek the protection of the automatic stay.  (Supp. App. 181)  The Bankruptcy Court correctly considered these concerns.

In addition, landlords Plaza Paseo Real Associates, LLC and ROIC Creekside Plaza, LLC filed oppositions to Debtor's motion to dismiss the case, explaining that Debtor's clearly expressed plans to continue its aggressive litigation posture if the case is dismissed is financially unsustainable and to the detriment of the Debtor's creditors, and that these creditors support the motions to convert the case to chapter 7. (Suppl. App. 524, 527)

As explained below, an evidentiary hearing was not required for the Court to find that cause existed.  Nor was an evidentiary hearing required for the Court to determine that conversion, rather than dismissal, was in the best interests of creditors and the estate.  As the Bankruptcy Court concluded, "a Ch. 7 Trustee at least has the potential of being able to wind down, in an orderly fashion, the presently operating restaurants of the debtor which the principal, mired in state court litigation, will be unable to achieve."  (Supp. App. 156).  The Bankruptcy Court had ample grounds to convert this case to chapter 7 without first conducting an evidentiary hearing regarding Debtor's disputed allegations against various creditors.

"A bankruptcy court has 'wide discretion' to 'use its equitable powers' to 'make an appropriate disposition of the case[.]'" *In re Am. Capital Equip., LLC*, 688 F.3d 145, 163 (3d Cir. 2012), quoting *Camden Ordnance*, 245 B.R. at 803. "Furthermore, the creditors favored conversion and the creditors are the best judge of their own best interests." *Camden Ordnance*, 245 B.R. at 802

The Bankruptcy Court did not abuse its discretion when it determined that "conversion of this case to one under Ch. 7 is appropriate and necessary for the protection of [creditors'] interests." (Supp. App. 156). The Bankruptcy Court's findings of fact are not clearly erroneous and its application of the legal standards under Section 1112(b)(1) was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.

## D.   NOTICE AND A HEARING:  APPELLANTS WERE AFFORDED DUE PROCESS AND WERE NOT ENTITLED TO AN EVIDENTIARY HEARING.

Appellants' two stated issues on appeal are:

1.    Whether the Bankruptcy Court denied Debtor and Appellants due process by refusing to hold an evidentiary hearing on the motion to dismiss bankruptcy and motions to convert (including objections to evidence file) from Chapter 11 to Chapter 7.

2.    Whether the Bankruptcy Court erred in refusing to accept exhibits and testimony at hearing on motion to dismiss and motions to convert Chapter 11 to Chapter 7.

(Opening Brief, at 1)  These issues are essentially the same:  Whether the Bankruptcy Court was required to turn a motion hearing into an evidentiary hearing.  The answer is No.  As explained above, the Bankruptcy Court had ample undisputed evidence of "cause," six creditors filed statements supporting conversion, and no creditor filed a statement supporting dismissal.  The Bankruptcy Court therefore had ample evidence

that the best interests of creditors and the estate required conversion of the case to chapter 7.

### 1.    _Notice and a Hearing_

The Bankruptcy Code permits the court to convert a case "after notice and a hearing." 11 U.S.C. § 1112(b)(1). The Bankruptcy Code defines "after notice and a hearing" as after such notice and opportunity for hearing "as is appropriate in the particular circumstances." 11 U.S.C. § 102(1). This definition is "flexible and sensitive to context" and means that "the court should give counsel a _meaningful_ opportunity to be heard." _In re Rosson_, 545 F.3d 764, 775 (9th Cir. 2008) (internal quotation omitted) (emphasis in original). In _Rosson,_ the Ninth Circuit Court of Appeal held that such a "meaningful opportunity to be heard" required "a hearing to allow [debtor] to present argument and supporting declarations explaining" its position. _Rosson_, 545 F.3d at 775. No evidentiary hearing is required. "When the record is sufficiently well developed to allow the bankruptcy court to draw the necessary inferences to dismiss [or convert] a Chapter 11 case for cause, the bankruptcy court may do so." _C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)_, 113 F.3d 1304, 1312 (2d Cir. 1997). Where debtor "was presented with notice of the claim and an opportunity to address it," due process is satisfied. _Id._ Furthermore, where, as here, the record provides amble evidence on which the Bankruptcy Court can make its decision, the Bankruptcy Court's election to decide the matter without a formal evidentiary hearing is within the court's discretion. _Id._ at 1313.

Here, the Bankruptcy Court issued the OSC on April 29, 2019, alerting Debtor and other parties in interest that "[f]ailure to … comply with the requirements ordered by the Court may be cause to … convert this case …." (Supp. App. 103) At the May 9, 2019 hearing, the Court set a hearing on May 16, 2019, and a briefing schedule for motions to dismiss or convert the case. (Supp. App. 548)

The Court found that creditors had specific concerns about Debtor's postpetition operations.  The Court did **not need to resolve** those concerns before deciding whether to dismiss or convert the case.  The fact that **creditors had such concerns**, in combination with the other issues of cause and the clear benefits of conversion, was sufficient to justify the protection of creditors' interests and the appointment of an independent chapter 7 trustee.  Appellants' argument that they were entitled to an evidentiary hearing to put forth evidence exonerating Debtor of financial malfeasance demonstrates Appellants' basic misunderstanding of Debtor's obligations under the Bankruptcy Code.  The Code and the Court required Debtor to file all the documents clearly identified in the OSC, which would have provided the transparency necessary to avoid allegations of financial malfeasance.[10]  It was Debtor's failure to timely file those documents that led to the allegations.  Debtor was not entitled to an evidentiary hearing to rebut the allegations; Debtor was required to timely file the necessary reporting documents, which Debtor failed to do.

Furthermore, there existed no grounds sufficient to justify dismissal of the chapter 11 case.  Debtors in bankruptcy have no right to dismissal of their cases.  *See* 11 U.S.C. § 305 (creditors' interests must be "better served" by dismissal in order for a court to dismiss a case); *Camden Ordnance*, 245 B.R. at 805 ("a debtor has no absolute right to dismiss a Chapter 11 case.").

Appellants argue, with absolutely no evidentiary support in the record, that dismissal was in best interest of creditors and estate.

The Bankruptcy Court's denial of Appellants' request for an evidentiary hearing did not prejudice Appellants because Appellants could not offer any credible evidence that creditors would be better offer with dismissal rather than conversion.  Six creditors supported conversion, while none supported dismissal.  In short, after

---

[10]    Or, perhaps, the information contained in the necessary reporting documents identified in the OSC would have confirmed the alleged financial malfeasance.

notice that the Court would consider whether to dismiss or convert the case, and after review of several creditors' requests for conversion, there is nothing that Appellants could have put forth in an evidentiary hearing that would alter the Court's finding that creditors—who are better able to discern their own best interests—preferred conversion.  Debtor's best interests are not considered under Section 1112(b).

As described above, the Bankruptcy Court had ample grounds to convert the case without consideration of the creditors' claims that are disputed by Appellants. Therefore, Appellants were not prejudiced by any perceived defective process afforded them.  *See In re Rosson,* 545 F.3d at 776 (concluding that defective process resulted in no prejudice to debtor under harmless error rule, Fed. R. Bankr. P. 9005).

### 2.    *Local Bankruptcy Rules*

Appellants' second issue on appeal is derivative of its first issue:  Whether the Bankruptcy Court erred in refusing to accept exhibits and testimony at the hearing on the motion to dismiss and motions to convert.  The answer is obviously No.  Debtor had an obligation to put forth its exhibits and testimony in its motion and/or opposition.  Under Local Rule 9013-7—applicable under Local Rule 9013-1 to any motion or objection with respect to which the Bankruptcy Code provides that relief may be obtained after "notice and a hearing"—all motions and oppositions must be in writing and include evidence supporting the relief requested.  LBR 9013-7(a).

Appellants did in fact file Debtor's motion to dismiss, opposition to creditors' motions to convert, and Appellant Marc Gates's declaration.  (Supp. App. 293, 55, 513, respectively).  Neither Debtor nor Appellants were entitled to present ***additional evidence*** at the hearing.

### 3.    *Bankruptcy Court's Discretion to Set Limitations and Conditions*

Moreover, Section 105(d) of the Bankruptcy Code provides that "[t]he court, on its own motion … may issue an order at any such [status] conference prescribing

1    such limitations and conditions as the court deems appropriate to ensure that the case

2    is handled expeditiously and economically ….." 11 U.S.C. § 105(d)(2).  The

3    Bankruptcy Court ruled that the hearing on the motion to dismiss and any creditor

4    motions to convert would not be an evidentiary hearing.  (ER 42 & 73)

5         Appellants argue that they should have been permitted to rebut to the

6    allegations made by MCOC and MUFG Union Bank by submitting additional

7    evidence to the Bankruptcy Court.  (Opening Brief, 21)  First, Debtor had the

8    opportunity to rebut the allegations by MCOC and MUFG Union Bank, and Debtor

9    in fact did so in its opposition to the motions to convert.  (Supp. App. 505-521)

10   Second, as explained above, the Bankruptcy Court did not need to resolve the truth of

11   the allegations in order to determine that conversion was better for creditors and the

12   estate than dismissal.  The fact that MCOC and MUFG Union Bank had their

13   concerns about Debtor's use of estate funds, combined with the other "cause" and

14   benefits of conversion expressly found by the Bankruptcy Court, was sufficient to

15   conclude that conversion was the best course.

16        Finally, at the May 16, 2019 hearing, the Bankruptcy Court summarized why

17   conversion was in the best interests of creditors:

18              But you know, Mr. Mirch, I think where we are in this case is
19              that the Debtor—the Debtor is—wants to burn its bridges,
                and I think that the Debtor wants to basically seek
20              vindication against MCOC for what it believes—the fraud
21              that was perpetrated, and that is not in the best interests of
                these landlords, who are being whipsawed by the claims that
22              your client has against the MCOC entities.

23              As I said in the Tentative Ruling, the focus is what is in the
24              best interest of creditors, not just your client, not just MCOC,
                but the five landlords who are already out many months of
25              rent, thousands of dollars of rent.

26

27   (ER 74-75)  Regarding Appellants' request to submit additional testimony, the Court

28   explained:  "It is clear from looking at the record the Court does not need additional

IN RE KARMA CAPITAL, INC.
CIVIL NO. 19cv1070-LAB (KSC)
APPELLEE'S RESPONSIVE BRIEF

22

testimony as to whether or not rent was or was not paid." (ER 73) Unpaid rent alone justified conversion over dismissal.

The Bankruptcy Court did not err in determining that additional evidence was unnecessary because the Court had ample undisputed grounds to convert the chapter 11 case to chapter 7 without incurring the delay and expense of an evidentiary hearing. For example, it was undisputed that cause existed under Section 1112(b) to either dismiss or convert the case. Debtor even agreed that cause existed under Section 1112(b). (Supp. App. 296-297) Once "cause" is found, it is up to the discretion of the Bankruptcy Court whether to dismiss or convert the case based solely on the best interests of the creditors and estate. 11 U.S.C. § 1112(b). This was not even a close call for the Court. Six creditors filed motions to convert or oppositions to dismissal laying out in detail why their interests are best served by conversion. No creditor filed a joinder or statement of position arguing that dismissal was in the best interests of any creditor or the estate. Debtor's preference for dismissal is irrelevant after cause is found. It is clear and undisputed that administration of the estate by an independent court-appointed chapter 7 trustee to preserve the assets that exist, allow for potential recovery of additional assets through use of his avoiding powers, and the sale or orderly wind-down of Debtor's restaurant business is far preferable to creditors than dismissal of the case, endless litigation, and a race to obtain Debtor's limited assets ahead of other creditors. No evidentiary hearing was needed for the Bankruptcy Court to determine, in its broad discretion, that conversion was warranted.

Finally, Appellants blatantly mischaracterize the Bankruptcy Court's refusal to indulge Appellants' demand for an evidentiary hearing as the Court being unwilling to "take the time for an evidentiary hearing" because the judge was leaving the country for three weeks. (Appellants' Opening Brief, at 24) Appellants' insinuations that *that* was the reason Appellants were denied an evidentiary hearing is entirely

unfounded and ignores all of the above reasons why Appellants were not entitled to an evidentiary hearing.

## V.

## CONCLUSION

Appellants admitted that "cause" existed under Section 1112(b) and that the case could not remain in chapter 11.  Upon finding cause, the Bankruptcy Court was required to either dismiss or convert the case to chapter 7, depending solely on whichever course was in the best interests of creditors and the estate.  Appellants, through Debtor, were afforded notice and a hearing to present their arguments and evidence in support of dismissal and against conversion.  Six creditors also presented their arguments and evidence against dismissal and in support of conversion.

The Bankruptcy Court applied the correct legal standard in determining whether to dismiss or convert this case.  The Bankruptcy Court also made specific findings of fact that were neither illogical, implausible, nor without support in inferences that may be drawn from the facts in the record.  The Bankruptcy Court's decision to convert Debtor's chapter 11 case to a case under chapter 7 was supported by the record and was not an abuse of discretion.

The Bankruptcy Court's order converting the chapter 11 case to a case under chapter 7 should be affirmed.

Respectfully submitted,

Dated:  September 3, 2019          FINANCIAL LAW GROUP


By:   s/Christin A. Batt
      CHRISTIN A. BATT, Esq.
      Attorneys for Ronald E. Stadtmueller,
      Trustee and Appellee
      E-mail:  christinb@flgsd.com

LAW GROUP

IN RE KARMA CAPITAL, INC.
CIVIL NO. 19cv1070-LAB (KSC)
APPELLEE'S RESPONSIVE BRIEF

24

CERTIFICATE OF COMPLIANCE

WITH BANKRUPTCY RULE 8015(a)(7)(B)

This brief document complies with the type-volume limitation of Bankruptcy Rule 8015(a)(7)(B) because this brief contains 7,530 words, excluding the parts of the brief exempted by Bankruptcy Rule 8015(g).

Dated:  September 3, 2019            FINANCIAL LAW GROUP


                                    By:   s/Christin A. Batt
                                          CHRISTIN A. BATT, Esq.

                                          Attorneys for Ronald E. Stadtmueller,
                                          Trustee and Appellee
                                          E-mail:  christinb@flgsd.com

# SCHEDULE 1

### In re Karma Capital, Inc.
### Bankruptcy Case No. 19-02962-LA7

| Date | Docket No. | Description | Appellants' Excerpt of Record | Appellee's Supplemental Appendix |
|---|---|---|---|---|
| | | Docket for Bankruptcy Case No. 19-01962-LA7 | | Supp. App. 005 - 028 |
| 04/04/2019 | 1 | Voluntary Petition for Non-Individuals Filing for Bankruptcy | | Supp. App. 028 - 038 |
| 04/18/2019 | 25 | Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy | | Supp. App. 039 - 056 |
| 04/18/2019 | 26 | Balance of Schedules | | Supp. App. 057 - 101 |
| 04/29/2019 | 55 | Order re Chapter 11 Petition 1) Setting Status Conference; 2) Setting Compliance Deadlines; and 3) Setting Sanctions | | Supp. App. 102 - 103 |
| 05/09/2019 | 76 | Notice of First Day Motion and First Day Motion By Debtor for Order (A) Authorizing Interim Use of Cash Collateral, (B) Granting Adequate Protection for Use of Prepetition Collateral, and (C) Granting related Relief | | Supp. App. 104 - 119 |
| 05/09/2019 | 76-1 | Proof of Service | | Supp. App. 120 - 121 |
| 05/09/2019 | Transcript | Transcript of Hearing on May 9, 2019 at 2:00 p.m. | ER 25 - 49 | Supp. App. 122 |

| Date | Docket No. | Description | Appellants' Excerpt of Record | Appellee's Supplemental Appendix |
|---|---|---|---|---|
| 05/10/2019 | 77 | Notice of Hearing and Motion filed by Santee Trolley Square 991, LP | | Supp. App. 123 - 130 |
| 05/10/2019 | 77-1 | Memorandum of Points and Authorities in Support of Creditor/Landlord Santee Trolley Square 991, LP's Motion for Conversion from Chapter 11 to Chapter 7 | | Supp. App. 131 - 140 |
| 5/10/2019 | 78 | MUFG Union Bank, N.A.'s Motion in Support of Court's Order to Show Cause Why Debtor's Chapter 11 Case Should Not Be Converted to Chapter 7 or Dismissed | | Supp. App. 176 - 201 |
| 5/10/2019 | 79 | Request for Judicial Notice in Support of MUFG Union Bank, N.A.'s Motion in Support | | Supp. App. 292 - 300 |
| 05/10/2019 | 82 | Proof of Service for Debtor's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 305(a), 349, And 1112(b) and Fed. R. Bankr. P. 1017(a) (A) Dismissing the Debtor's | | Supp. App. 141 - 142 |
| 5/11/2019 | 83 | Mediterranean Cuisine Operating Company, LLCs Motion for Conversion of Debtor's Chapter 11 Case to Chapter 7; Declaration of Michael Nakhleh in Support | | Supp. App. 301 - 503 |

| Date | Docket No. | Description | Appellants' Excerpt of Record | Appellee's Supplemental Appendix |
|------|-----------|-------------|------------------------------|--------------------------------|
| 5/14/2019 | 90 | Debtor's Opposition to Motion to Convert Chapter 11 to Chapter 7 | | Supp. App. 504 - 512 |
| 5/14/2019 | 91 | Declaration of Marc Gates in Support of Opposition to Motions to Convert | | Supp. App. 513 - 521 |
| 5/14/2019 | 95 | Opposition of Plaza Paseo Real Associates, LLC to Debtor's Motion to Dismiss Bankruptcy Case | | Supp. App. 522-525 |
| 5/14/2019 | 97 | Opposition of ROIC Creekside Plaza LLC to Debtor's Motion to Dismiss Bankruptcy Case | | Supp. App. 526 - 529 |
| 5/14/2019 | 98 | Proof of Service | | Supp. App. 530 - 532 |
| 5/14/2019 | 99 | Acting United States Trustee's Omnibus Statement of Position to Motions to Dismiss Chapter 11 Case or to Convert to Chapter 7 Case | | Supp. App. 533 - 540 |
| 5/14/2019 | 101 | Notice of Lodgment | | Supp. App. 541 - 546 |
| 05/14/2019 | 102 | Opposition of Mediterranean Cuisine Operating Company, LLC and Mediterranean Cuisine Franchising Company, LLC to Debtor's Motion for Entry of An Order Dismissing the Debtor's Chapter 11 Case | | Supp. App. 143 - 152 |

| Date | Docket No. | Description | Appellants' Excerpt of Record | Appellee's Supplemental Appendix |
|---|---|---|---|---|
| 05/14/2019 | 102-1 | Proof of Service | | Supp. App. 153 - 154 |
| 05/15/2019 | 108 | Tentative Ruling re MUFG Union Bank's Motion in Support of Court's Order to Show Cause Why Debtors' Ch. 11 Case Should Not Be Converted to Ch. 7 or Dismissed | | Supp. App. 155 - 157 |
| 5/16/2019 | 110 | Minute Order [May 9, 2019 Hearing] | | Supp. App. 547 - 548 |
| 05/16/2019 | 113 | Minute Order [May 16, 2019 Hearing] | | Supp. App. 158 - 159 |
| 05/16/2019 | Transcript | Transcript of Hearing on May 16, 2019 at 10:30 a.m. | ER 50 - 80 | Supp. App. 160 |
| 05/17/2019 | 114 | Notice of Lodgment re Order re Debtor's Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case | | Supp. App. 161 - 166 |
| 05/17/2019 | 115 | Notice of Lodgment re Order Converting Case Under Chapter 11 to Case Under Chapter 7 | | Supp. App. 167 - 172 |
| 5/22/2019 | 119 | Objection to Lodge Order re: Conversion of Chapter 11 to Chapter 7 | | Supp. App. 549 - 553 |